# UNITED STATES DISTRICT COURT

for the

Middle District of North Carolina

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) Case No. 1:19mj296 |
| White and Gold in Color iPhone 6S, Currently Located at 1801 Stanley Road, Greensboro, North Carolina 27401 | ) ) ) |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____Middle_____ District of _____North Carolina_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 21 U.S.C. Section 846 | Drug Conspiracy |
| Title 21 U.S.C. Section 841(a)(1) | Possession with Intent to Distribute a Controlled Substance |

The application is based on these facts:

See Attached Affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Michael B. Newsome, Special Agent, ATF
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 09/06/19

_____
*Judge's signature*

City and state:  Greensboro, North Carolina

L. Patrick Auld, United States Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, Michael B. Newsome, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2.      I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") and have been so employed since May 2017. I am a graduate of the Federal Law Enforcement Training Center ("FLETC") Criminal Investigator Training Program, as well as the ATF National Academy, where I received extensive training in the investigation of firearms, controlled substances, arson, and explosives offenses.  I have participated in investigations involving all of these areas.  Prior to my career with ATF, I worked for the Rocky Mount Police Department in North Carolina for

approximately nine and a half years. During my tenure with the Rocky Mount Police Department, I served as a duly sworn Task Force Officer with ATF from 2014 – 2017. During my career in law enforcement, I have conducted numerous complex case investigations involving federal and state firearms and controlled substance violations. During the course of these investigations, I have obtained multiple federal and state search warrants authorizing the examination of electronic devices. I have also had the opportunity to examine the contents of these devices which has resulted in the seizure of evidence relevant to my investigations. Prior to my career in law enforcement, I attended North Carolina State University and graduated in 2007 with a Bachelor of Arts Degree in Criminology.

3.     This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

4.     The property to be searched is a white and gold in color iPhone 6S, Model A 1688, unknown serial number, hereinafter the "Device." The Device is currently located at 1801 Stanley Road, Greensboro, North Carolina 27401. It has been submitted into evidence as ATF Exhibit 011.

2

5.     The applied-for warrant would authorize the forensic examination of the Device for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

6.     In April 2018, the Randolph County Sheriff's Office (RCSO) Vice and Narcotics Unit interviewed a confidential and reliable informant (CI) who identified 5541 Mendenhall Road Extention, Trinity, North Carolina as a location where heroin was being sold.  The CI identified Kason Hikeem HARRINGTON aka "Gates" as the source for this heroin.  The CI also identified Antoine Maurice GLADDEN aka "Skrap" as one of HARRINGTON's associates.

7.     In furtherance of the investigation, the RCSO utilized the CI to make a series of controlled purchases of heroin.  The first of these controlled purchases were made from Jadarrius MALLETTE, whom the CI identified as an associate of HARRINGTON and GLADDEN.  These controlled purchased were made on March 8, 2018 and March 21, 2018, respectively.

8.     On April 13, 2018, the CI purchased a small quantity of heroin directly from HARRINGTON at the direction and under the supervision of

3

the RCSO. During this controlled purchase, GLADDEN was identified as a passenger in the vehicle that was driven by HARRINGTON.

9.     On April 20, 2018, a second controlled purchase was made from HARRINGTON. On this occasion, the CI again purchased a small quantity of heroin from HARRINGTON at the direction and under the supervision of the RCSO. GLADDEN was again determined to be a passenger in the vehicle that was driven by HARRINGTON.

10.    While conducting pre-operational and post-operational surveillance during these controlled purchases, the RCSO was able to develop probable cause that 2830 Craig Point, High Point, North Carolina was a place where HARRINGTON and GLADDEN were storing heroin and/or proceeds of their drug activities. This location was also determined to be the location where GLADDEN lived with his girlfriend, Jocelyn Townsend.

11.    On April 26, 2018, the RCSO utilized a CI to order a small quantity of heroin from HARRINGTON. When HARRINGTON and GLADDEN arrived to complete the transaction, both individuals were taken into custody by the RCSO without incident. A search incident to arrest revealed that there was approximately thirty (30) grams of heroin inside of the vehicle.

4

12.     A state search warrant was executed at 2830 Craig Point, High Point, North Carolina simultaneously with the arrest of HARRINGTON and GLADDEN. An individual identified as Jamel MCINNIS was located at the residence and taken into custody after it was determined he was in possession of a small quantity of heroin. During a search of the residence, investigators located various items of contraband to include approximately seventy-five (75) grams of heroin, approximately two (2) pounds of marijuana, five (5) firearms, and approximately $12,000.00 in United States currency.

13.     Following the arrest of HARRINGTON and GLADDEN, I had the opportunity to conduct a post arrest interview with GLADDEN. After waiving his <u>Miranda</u> Rights, GLADDEN admitted that he sold marijuana and small quantities of heroin. GLADDEN also admitted that 2830 Craig Point, High Point, North Carolina was a location used by himself, HARRINGTON, and others to store narcotics. GLADDEN also claimed half of the currency found in the residence and admitted that it was proceeds of selling narcotics.

14.     I also had the opportunity to conduct a post arrest interview with Jamel MCINNIS. MCINNIS waived his <u>Miranda</u> Rights and agreed to be interviewed without the presence of an attorney. MCINNIS stated that he was primarily a marijuana dealer, but sold small quantities of heroin

5

occasionally. MCINNIS, who is a previously convicted felon, also acknowledged the firearms that were located during the execution of the warrant.

15.     On August 24, 2018, the High Point Police Department (HPPD) conducted a traffic stop on a vehicle driven by HARRINGTON for an improper turn. MALLETTE was determined to be a passenger in this vehicle. During this traffic stop, officers were able to determine that an unknown quantity of heroin was dumped into a drink cup in the center console in an effort to avoid detection by law enforcement. This liquid was later sent to the North Carolina State Crime Lab where it was analyzed and confirmed to be a mixture containing heroin.

16.     On May 29, 2019, HARRINGTON, GLADDEN, MCINNIS, and MALLETTE were indicted by a federal grand jury in the Middle District of North Carolina for Conspiracy to Distribute Heroin in violation of Title 21, United States Code § 846. This indictment was related to the aforementioned investigation conducted by the RCSO and HPPD. Following the indictment, I requested assistance from the Greensboro Police Department (GPD) Violent Criminal Apprehension Team (VCAT) for service of the arrest warrants.

17.     On August 14, 2019, I was contacted by VCAT and informed that they had developed information that GLADDEN was inside of an apartment

6

at 1215 Glenstone Trail, High Point, North Carolina. I responded to that location to assist with serving the warrant. Members of VCAT surrounded the apartment and began trying to make contact with GLADDEN. After approximately three (3) hours, a family member assisted officers with contacting GLADDEN by telephone. GLADDEN eventually agreed to come out of the apartment and surrender.

18.     When GLADDEN was taken into custody by VCAT, he was holding a cellular phone in his hand. This cellular phone was seized by members of VCAT and immediately turned over to me. I placed the cellular phone inside of my vehicle and responded to the HPPD to process and assume custody of GLADDEN. I later identified the device as a white and gold iPhone Model 6S.

19.     After processing GLADDEN, I placed him inside of my vehicle to be transported to the federal courthouse in Winston-Salem, North Carolina for an Initial Appearance. Prior to leaving the parking lot, GLADDEN inquired about the cellular phone that was seized from him. I informed GLADDEN that it had been seized. I asked GLADDEN if he would give me consent to search the device. GLADDEN stated that the cellular phone was "good," and that he did not care if I searched it. Asheboro Police Department

7

(APD) Officer Matt Kiser was also present to witness GLADDEN consenting to a search of the device.

20.     After receiving consent, I opened the device and clicked on the text message application. I noticed a conversation in the application with a contact identified as "Gates." I knew this to be the alias of GLADDEN's co-conspirator, Kason HARRINGTON. I clicked on the conversation and quickly scrolled down through the messages that had been exchanged between GLADDEN and HARRINGTON.

21.     I immediately recognized several messages that from my training and experience were indicative of drug trafficking. In particular, I noticed multiple messages referencing "ice." Based upon my training and experience, I know "ice" to be a slang term used for crystal methamphetamine. I also recall one message that described paying $5,000.00 for a pound and a half. These messages were included in some of the most recent text messages that were sent and received by the Device in the conversation history. Due to the messages that I had observed in this one conversation, I decided to submit the device into evidence so that a search warrant could be obtained to thoroughly examine its contents at a later date. Based upon my review of these recent text messages, I reasonably believe that the GLADDEN and

HARRINGTON are still actively engaging in a conspiracy to distribute narcotics as of August 14, 2019.

22.     I know that GLADDEN was on post release supervision from the North Carolina Department of Corrections (NCDOC) at the time of his arrest on April 26, 2018. Following his arrest, GLADDEN was ordered to serve the remainder of his active sentence. According to NCDOC records, GLADDEN was released from prison in December of 2018. As such, I reasonably believe that the Device seized from GLADDEN on August 14, 2019 will only contain evidence of a drug trafficking by GLADDEN, HARRINGTON, MCINNIS, and MALLETTE from December 2018 to present.

23.     Based upon my training and experience, I know that drug traffickers utilize cellular devices to facilitate their drug crimes. I know that these devices are commonly used to communicate with accomplices, co-conspirators, and sources of supply. These devices are also used to arrange and coordinate transactions between drug traffickers and their customers. I have found that evidence of these communications is often stored on the device itself. Evidence of these communications is often found in the form of photographs and/or video of contraband that has been shared with potential customers as advertisement. I have also found that drug traffickers commonly share photographs and/or video of drugs, firearms, and proceeds

9

with other drug traffickers to boast about their accomplishments. The examination of these devices often leads to the discovery of additional evidence relative to the investigation, as well as, the identification of others involved in the criminal organization.

24.     The Device is currently in the lawful possession of the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF). It came into the ATF's possession in the following way: seized incident to arrest while serving a federal arrest warrant on Antonie GLADDEN for Conspiracy to Distribute Heroin. Therefore, while the ATF might already have all necessary authority to examine the Device, I seek this additional warrant out of an abundance of caution to be certain that an examination of the Device will comply with the Fourth Amendment and other applicable laws.

25.     The Device is currently in storage at the ATF Greensboro Vault, located at 1801 Stanley Road, Greensboro, North Carolina. In my training and experience, I know that the Device has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the Device first came into the possession of the ATF.

# TECHNICAL TERMS

26. Based on my training and experience, I use the following technical terms to convey the following meanings:

    a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones

may also include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media

can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the

antenna's latitude, longitude, and sometimes altitude with a high level of precision.

    e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

    27. Based on my training, experience, and research, and from consulting the manufacturer's advertisements and product technical specifications available online at https://www.apple.com, I know that the

Device has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

28.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

29.     *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

   a. Data on the storage medium can provide evidence of a file that
      was once on the storage medium but has since been deleted or

edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary

to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

30. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

31. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

17

## CONCLUSION

32.     I submit that this affidavit supports probable cause for a search

warrant authorizing the examination of the Device described in Attachment

A to seek the items described in Attachment B.

Respectfully submitted,

Michael B. Newsome
Special Agent
Bureau of Alcohol, Tobacco,
Firearms and Explosives

Subscribed and sworn to before me
on September 6, 2019:

L. PATRICK AULD
UNITED STATES MAGISTRATE JUDGE

18

# ATTACHMENT A

1.     The property to be searched is a white and gold in color iPhone 6S, Model A 1688, unknown serial number, hereinafter the "Device." The Device is currently located at 1801 Stanley Road, Greensboro, North Carolina 27401. It has been submitted into evidence as ATF Exhibit 011.

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

# ATTACHMENT B

## I.   Content to be searched by the government

   a. Text messages (SMS);

   b. Picture messages (MMS);

   c. e-mails;

   d. direct messages and group communication messages sent using
      messaging apps;

   e. social media applications utilized by the Device;

   f. contacts and contact information in any address books;

   g. phone numbers stored on the Device in address books and calls
      logs;

   h. voicemails;

   i. photographs;

   j. videos;

   k. Internet website history;

   l. GPS navigation application history.

## II.    Particular things to be seized by the government

All content on the Device described in Attachment A that relate to violations of Title 21, United States Code § 846, Drug Conspiracy and Title 21, United States Code § 841(a)(1), Possession with Intent to Distribute a Controlled Substance, involving Antoine GLADDEN, Kason HARRINGTON, Jamel MCINNIS, and/or Jadarrius MALLETTE since December 2018, in the form of:

a. types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

b. lists of customers and related identifying information;

c. any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

d. Photographs and videos related to possession and distribution of drugs;

e. all bank records, account information, and other financial records that may contain evidence of drug trafficking proceeds;

f. GPS coordinates and other stored location information revealing the location of the Device during the conspiracy from December of 2018 through the present;

g. website addresses visited and search engine searches and results, pertaining to drug activity;

h. any social media account information on the Device, as well as user names and passwords, and connections to other social media users;

i. any of the above information stored on the Device, which was previously deleted, but recovered through forensic examination;

j. Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.